Gloria Z. ABEJA–ORTIZ, Plaintiff,

v.

Henry G. CISNEROS, Defendant.

No. 94 C 4439.

United States District Court,
N.D. Illinois,
Eastern Division.

April 7, 1995.

Jonathan B. Gilbert, David Philip Schippers, James M. Bailey, Schippers, Gilbert & Bailey, Chrtd., Chicago, IL, for plaintiff.

Matthew David Tanner, U.S. Atty's Office, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Plaintiff, Gloria Z. Abeja–Ortiz ("Ortiz"), filed suit alleging sexual harassment, sex discrimination and retaliation against defendant Henry G. Cisneros ("Cisneros"), Secretary of the United States Department of Housing and Urban Development. The defendant has moved to dismiss the plaintiff's first amended complaint under Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the court grants the defendant's motion.

## I. *BACKGROUND*

The following is a summary of the facts in the light most favorable to the plaintiff. Ortiz is a Special Agent of the Office of Inspector General for Investigations, United States Department of Housing and Urban Development ("HUD"), Office of the Inspector General ("OIG"), Region V, Chicago, Illinois. Ortiz claims that she experienced discrimination and harassment due to allegations of sexual impropriety contained in two anonymous letters sent to the HUD–OIG office in Washington, D.C. Ortiz further alleges that Cisneros mishandled the investigation into the alleged misconduct and that she suffered adverse effects in the office. Finally, plaintiff claims that she has been retaliated against as a consequence of her engaging in a protected activity.

This complaint arises as a result of an eight page letter that was sent to Cisneros on July 17, 1993. The author of that letter demanded that an investigation be conducted concerning alleged sexual misconduct involving the Region V office of the HUD Inspector General in Chicago, Illinois and the actions of its employees. The letter was anonymously written but claimed, *inter alia,* that (1) Ortiz and other females obtained their positions with HUD–OIG in Chicago only because they were young attractive females who will be able to employ sexual favors to gain favorable treatment and promotions from the male Regional Inspector General; (2) Ortiz had agreed to be in training to become the next "in-house sex slave" of the Regional Inspector General and another individual in Washington, D.C. for the purpose of obtaining favorable treatment and promotions; and (3) Ortiz would give sexual favors for the benefit of the Regional Inspector General and another individual in Washington, D.C. in order to gain a rapid promotion within the OIG.

A second anonymous letter was sent to Cisneros on August 9, 1993. In the letter, the author made reference to the July 17 letter and complained that no investigation by HUD had begun. The author also accused the plaintiff and others of engaging in unlawful sexual activity and went into much greater detail of the nature and extent of the sexual misconduct. Copies of the July 17 letter were given to Ortiz and others implicated in the office. However, the August 9 letter was not distributed due to the author's demand that the plaintiffs not be notified of the charges.

After the second letter, HUD–OIG in Washington, D.C. immediately initiated an investigation of the charges. Two investigators from the United States Department of Defense ("DOD") were sent to Chicago on the case. Ortiz contends that the investigation was conducted in a biased, unprofessional manner and that the investigators discriminated against her on the basis of gender. Specifically, Ortiz alleges that during the investigation the investigators (1) treated the plaintiff and her prospective witnesses in a belligerent, hostile, and accusatory manner; (2) indicated in various ways that they believed the allegations of sexual misconduct against the plaintiff to be true; (3) accused the plaintiff of lying about her sexual liaison with her supervisor and the other alleged acts of sexual misconduct; (4) accused any witness who gave information favorable to the plaintiff of lying; and (5) indicated that a "sex for favors" atmosphere existed in Chicago, thus fostering rumors that plaintiff or other females were engaging in sexual misconduct to further their careers. As a result of the investigators' mishandling of the case, a number of untrue rumors began circulating concerning the plaintiff's professional competence and alleged sexual misconduct. These rumors unreasonably interfered with the plaintiff's employment by creating an environment that is hostile, offensive, and sexually charged. Furthermore, plaintiff contends that several of her colleagues avoided any contact with her and her reputation was irreparably damaged as the rumors spread not just within the Chicago office but also throughout the country.

To express her dissatisfaction, the plaintiff informed Susan Gaffney ("Gaffney"), Inspector General of HUD, of the manner in which the investigation was then being handled and the misconduct of the investigators. Plaintiff requested that an investigation be undertaken to ascertain who made the false charges and determine the motive. Gaffney publicly referred to the situation as "crap" but, otherwise, ignored the letter. Later, on or about December 6, 1993, plaintiff informed Cisneros of the manner in which the investigation was then being handled. Plaintiff advised Cisneros of Gaffney's remedial inaction and disparaging remarks and told him that she felt she was working in a hostile, offensive environment.

Later in December, the DOD investigators concluded their investigation, ultimately finding that the allegations made in the two anonymous letters were totally false. Notwithstanding that fact, HUD–OIG management told the male supervisor and the females in the office, including Gaffney, that they should avoid the "perception" of any sexual activity. The basis for these innuendos and suggestions from management was solely the gender of the persons involved. Plaintiff, meanwhile, maintains that she continues to work in a hostile, abusive work environment.

On December 6, 1993, the plaintiff filed an internal complaint with the agency. To date, HUD has undertaken no investigation of the complaint and no final decision has been made. Furthermore, after plaintiff made her complaint, HUD–OIG management intentionally retaliated against her. Specifically, management engaged in the following acts: (1) on November 29, 1993, in a meeting with the entire Region V staff, General Gaffney ridiculed those individuals, including plaintiff, who complained of sexual discrimination; (2) supervisors in Chicago and Washington treated those who complained of sexual discrimination, including plaintiff, with disrespect and disdain; (3) management officials made derogatory remarks about plaintiff to other individuals in the office, thus compromising and undermining plaintiff's ability to perform her duties; and (4) Gaffney and other members of HUD–OIG management told plaintiff and other female agents that they should avoid the perception of sexual misconduct by not being alone, by not traveling with, and by never meeting behind closed doors with any male agent or supervisor. This was intended to punish those who made complaints and gave credence to the rumors of sexual misconduct.

On July 21, 1994, the plaintiff filed a complaint in this court against Cisneros and Gaffney. On October 13, the plaintiff amended her complaint, dismissing Gaffney as a party defendant. Defendant Cisneros now

moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

## II. *STANDARD OF REVIEW*

A Rule 12(b)(6) motion to dismiss for failure to state a claim is granted only where it is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must take all well pleaded facts and allegations as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, plaintiff is entitled to all reasonable inferences that may be drawn from the complaint. *Id.*

## III. *ANALYSIS*

On March 16, 1995, Judge Marovich decided two cases that are companion to this one. *McDonnell v. Cisneros*, 1995 WL 110131 (N.D.Ill. March 16, 1995). After a thorough analysis, he concluded that the two plaintiffs had failed to state claims for sex discrimination, sexual harassment, or retaliation. *Id.* at *11. Now before the court are the same claims from the plaintiff in this case, Ortiz. Given that the amended complaints of Ortiz and McDonnell actually mirror one another, with few differences, the court feels no need to go into a lengthy analysis. However, the court does feel compelled to briefly explain why the defendant's motion to dismiss all three claims should be granted.

With respect to the sex discrimination and retaliation claims, a plaintiff must allege that he or she has suffered an adverse employment action. *Loyd v. Phillips Brothers, Inc.* 25 F:3d 518, 522–23 (7th Cir.1994) (sex discrimination); *Reed v. Shepard*, 939 F.2d 484, 492 (7th Cir.1991) (retaliation). In this case, both claims must fail because her allegations do not rise to the level of an adverse employment action.

Adverse job action in the Title VII context can take many forms, including outright dismissal, reduction of pay or benefits, transfer to another department or an isolated corner of the workplace, or directions to relocate one's personal files and to refrain from using the firm stationery or office services. *Collins v. State of Illinois*, 830 F.2d 692, 703–04 (7th Cir.1987). In this case, Ortiz does not allege any of the above actions by her employer; instead, she claims that she experienced adverse action because the DOD investigators mishandled the investigation, resulting in the circulation of rumors concerning the plaintiff's professional competence and alleged sexual misconduct. Furthermore, plaintiff contends that the rumors irreparably damaged her reputation and that several of her colleagues avoided any contact with her.

The plaintiff, in this case, was one of the unfortunate subjects of two anonymous letters that HUD–OIG felt obligated to investigate. As Ortiz mentioned in her amended complaint, the investigation "ultimately determined that all of the allegations that had been made in each of the two letters were false and totally without foundation in fact." (First Amended Complaint ¶ 24.) Since that time, plaintiff has not been fired, demoted, or transferred. The fact that rumors circulated throughout the office, while unfortunate, is not actionable against Cisneros. Therefore, plaintiff's claims for sex discrimination and retaliation should properly be dismissed.

In addition, as Judge Marovich discussed in *McDonnell v. Cisneros*, 1995 WL 110131 at *6, plaintiff has made no allegation that the rumors were directed at her because of her gender. The subjects of the anonymous letters included both men and women and all were investigated by the team from the DOD. *Id.* In addition, from *McDonnell*, it is apparent that the rumors were not only directed at just the female subjects but also at the male subjects. *Id.* Finally, Gaffney's statements regarding actions that should be avoided were made to all of the employees, and the investigators' comments were made to both male and female witnesses. Therefore, even if plaintiff could allege adverse job action, she still may not even be able to allege that she was discriminated based on her sex.

Plaintiff also seeks to recover under a claim for sexual harassment. The five ele-

128

ments necessary in order to state a sexual harassment claim include:

"(1) The employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (5) the existence of respondeat superior liability."

*Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235, 1238 (7th Cir.1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990). As Judge Marovich outlined in *McDonnell*, besides the fact that the plaintiff is a woman and therefore from a protected class, thus satisfying the first prong of *Swanson*, plaintiff does not properly allege any of the remaining four elements. Consequently, since Ortiz has failed to allege a claim for sexual harassment, defendant's motion to dismiss should be granted.

### CONCLUSION

Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted. This case is dismissed with prejudice.