John MURPHY, Plaintiff,

v.

VILLAGE OF HOFFMAN ESTATES, Defendant.

No. 95 C 5192.

United States District Court, N.D. Illinois, Eastern Division.

March 27, 1997.

Jacqueline H. Lower, Sheehan & Lower, Cary, IL, Gilbert Feldman, Cornfeld & Feldman, Chicago, IL, Lance M. Green, McHenry, IL, for Plaintiff.

Keri-Lyn J. Krafthefer, Thomas G. DiCianni, Timothy E. Guare, Ancel, Glink, Diamond, Cope & Bush, P.C., Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

ASHMAN, United States Magistrate Judge.

### I.  Background

The following is a summary of the factual background as set forth in the Plaintiff's complaint: Plaintiff began his employment

with Hoffman Estates in May of 1981 as a worker in the Village's Street Department. Plaintiff was employed as an M–2 crew leader until approximately June of 1995, when he was demoted to the position of M–1 crew leader with an attendant reduction in pay effective May 18, 1996. However, Plaintiff was terminated on March 7, 1996, before the pay reduction took effect.

On January 29, 1993, Plaintiff received a written notification and directive from one of his supervisors for reasonable suspicion of being under the influence of drugs or alcohol while on the job on January 27, 1993. Plaintiff received a 30–day suspension for the alcohol related incident which began on February 1, 1993 and a 15–day suspension for verbally harassing a supervisor which began on March 3, 1993. Pursuant to the notification, Plaintiff was required to enter a drug and alcohol rehabilitation program and to consent to random drug/alcohol testing during work hours for the next two years, during which time Plaintiff's employment could be terminated immediately if he tested positive. Additionally, as a condition of Plaintiff's continued employment, he was required by the Village to attending counseling sessions with Mr. Chuck Jones through the Employee's Assistance Program.

During February 1993, Plaintiff enrolled in an outpatient alcohol and drug treatment program which lasted one and a half months. Plaintiff returned to work after completing the program and has not had a drinking problem since that time.

Employees in the Street Department were generally given performance reviews on an annual basis. However, on February 3, 1995, Plaintiff received a performance evaluation report covering the period from November of 1992 through November of 1994. Although Plaintiff's bi-monthly reports for 1994, given by his immediate supervisor, showed Plaintiff's performance to be satisfactory, he was given a rating of poor on the performance evaluation covering the two-year period. By combining two years of evaluation into one report, Defendant was able to evaluate Plaintiff on the basis of performance and other related problems that occurred prior to the Plaintiff's completion of rehabilitation. As a consequence of this report, Plaintiff was put on probation in February of 1995. On March 27, 1995, Plaintiff informed Defendant that its actions constituted employment discrimination on the basis of his age and alcohol-related handicap. Plaintiff was then placed on administrative leave effective May 31, 1995, and demoted on June 15, 1995. Plaintiff filed charges of discrimination with the Illinois Department of Human Rights ("IDHR") in August of 1995 and filed suit in this Court on September 12, 1995. In March of 1996, charges were brought against Plaintiff ordering his termination based on, *inter alia,* a "pattern since 1991 of unsafe practices." Plaintiff filed additional charges of discrimination with the IDHR in April of 1996. Plaintiff was then officially terminated on May 1, 1996.

On August 15, 1996, Plaintiff was given leave to file a Third Amended Complaint, containing sixteen counts; seven counts seeking relief pursuant to the ADA, 42 U.S.C. § 12101 *et. seq.,* five seeking relief pursuant to the ADEA, 29 U.S.C. § 623(d), three seeking relief under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, and one state law claim for Intentional Infliction of Emotional Distress. All of the counts allege different nuances of discrimination, retaliation and adverse employment action.

Plaintiff now moves to file a Fourth Amended Complaint, adding as an exhibit, an additional right to sue letter. This letter arose from a charge alleging retaliatory conduct which occurred after the filing of this suit. Additionally, Plaintiff seeks to add Chuck Jones, the Village's Employee Assistance Program therapist, as a defendant and to add a seventeenth count alleging a violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("Mental Health Act"), 740 ILCS 110/1 *et. seq.* Plaintiff states that, since the filing of the Third Amended Complaint, depositions of current Department of Public Works employees have revealed that Chuck Jones disclosed confidential information regarding Plaintiff to these employees. Plaintiff states that there has been no bad faith, dilatory motive or undue delay in bringing this motion and that the Defendant will not be prejudiced because

it has not served any written discovery on Plaintiff, nor have the depositions of Plaintiff or Jones been taken.

Defendant does not oppose the Plaintiff's motion to amend with respect to the addition of the right to sue letter as an exhibit. However, Defendant does oppose the motion with respect to the addition of the Mental Health Act claim contained in proposed Count XVII. Defendant objects to the addition of this count on the basis that it is not within the Court's supplemental jurisdiction, resulting in a lack of subject matter jurisdiction over the claim.

## II. *Analysis*

Defendant submits a two-prong argument in support of its contention that the Plaintiff's motion for leave to file a fourth amended complaint should be denied: (1) the claim contained in Count XVII is not within the Court's supplemental jurisdiction and (2) even if the Court does have supplemental jurisdiction over the claim, it should decline to exercise its jurisdiction pursuant to 28 U.S.C. § 1367(c).

### A. The Court Has Supplement Jurisdiction Over The Plaintiff's Mental Health Act Claim.

The Defendant first argues that the claim contained in proposed Count XVII is not within the Court's supplemental jurisdiction and therefore, the Plaintiff's motion for leave to file a Fourth Amended Complaint should be denied.

■ Generally, leave to amend the complaint is liberally granted. FED R. CIV. P. 15(a) However, leave to amend may be denied where it would either prejudice the opposing party or result in the addition of a futile claim or allegation. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). An amendment is futile where it is incapable of surviving a motion to dismiss. *Glick v. Koenig,* 766 F.2d 265, 268 (7th Cir.1985), *Garcia v. City of Chicago,* 24 F.3d 966, 970 (7th Cir.1994). Thus, if proposed Count XVII would not withstand a motion to dismiss based on lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), the amendment should not be al-

lowed. The Court therefore turns to an analysis of whether Plaintiff's Mental Health Act claim falls within the ambit of this Court's jurisdiction.

■ When a plaintiff brings claims properly within the court's original jurisdiction, the court becomes, in certain circumstances, empowered to hear the plaintiff's state law claims as well. Section 1367(a) of the United States Code authorizes the court to exercise supplemental jurisdiction over state claims that "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the Constitution." 28 U.S.C. § 1367(a). A claim is so related when the federal and state claims "derive from a common nucleus of operative facts" such that the plaintiff would "ordinarily expect to try them all in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The facts involved in the state claim need only be loosely connected to the federal claim in order to satisfy the common nucleus of operative fact requirement. *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir.1995); *Channell v. Citicorp,* 89 F.3d 379, 385 (7th Cir.1996).

Defendant first contends that the state law claim in Count XVII does not fall within the court's supplemental jurisdiction because this claim and the other federal claims do not derive from a common nucleus of operative facts and therefore, do not constitute part of the same case or controversy. The federal counts allege that the Village committed various unlawful acts with respect to the Plaintiff's employment when the Village demoted and ultimately terminated Plaintiff. Conversely, Count XVII alleges that the Village and Jones violated the Mental Health Act "by disclosing confidential information respecting the fact of Plaintiff's treatment and Plaintiff's condition, mental health and stability." Defendant argues that Count XVII raises different proofs, facts and legal issues and that the only nexus between it and the federal counts is the involvement of the same parties and some of the same witnesses. Thus, Defendant asserts that Count XVII does not involve an analysis and resolution of

the same factual or legal issues raised by Plaintiff's federal claims, namely those related to the Plaintiff's employment with the Village.

In support of its argument that the federal claims and the Mental Health Act claim are unrelated, Defendant contends that the conversation giving rise to the Mental Health Act claim in Count XVII occurred after the Plaintiff's termination and that therefore, the claims arising from Plaintiff's termination and the claim arising from Jones' disclosure of allegedly confidential information could not have arisen from a common nucleus of operative facts and could not form part of the same case or controversy.

Plaintiff responds that the claim contained in Count XVII falls squarely within the Court's supplemental jurisdiction. Plaintiff asserts that the case at bar arises from a "continuous pattern of harassment, discrimination and retaliation against Mr. Murphy" which continued beyond the day he was terminated. Plaintiff contends that part of this pattern of harassment and retaliation included Mr. Jones' disclosure of confidential communications to Plaintiff's former co-workers. Thus, Plaintiff asserts that these allegations not only form the basis for the state claim in Count XVII, but also form part of the Plaintiff's federal retaliation claims. Consequently, the Plaintiff argues that the state claim is part of the same case or controversy already before the Court.

Two factors courts look at to determine whether the state and federal claims are so related as to form part of the same case or controversy include: (1) whether the state claim realleges and incorporates allegations contained in the federal claim and (2) the temporal relationship between the two claims. Often, where the events that form the basis of the plaintiff's federal claims occur prior to those which constitute his state law claim, the separate time frames signal the lack of a "common nucleus of operative facts," thereby precluding the Court from exercising its supplemental jurisdiction over the state claim. *Thomas v. Schwartz and Associates,* 1996 WL 277616, at *2 (N.D.Ill. 1996); *Freiburger v. Emery Air Charter, Inc.,* 795 F.Supp. 253, 258 (N.D.Ill.1992).

Here, although the Plaintiff has realleged and incorporated the allegations from its federal claims in Count XVII, the incidents involved in Count XVII occurred after Plaintiff was fired and therefore, after the incidents giving rise to Plaintiff's federal claims.

However, Plaintiff contends that the facts contained in the state claim form a part of his federal retaliation claims and therefore derive from a common nucleus of operative facts. Plaintiff refutes the Defendant's assertion that acts occurring after the Plaintiff's termination cannot be related to the retaliation claims by pointing to the Supreme Court's recent pronouncement that actionable retaliation can occur after a plaintiff's employment has been terminated. *Robinson v. Shell Oil Co.,* —— U.S. ——, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Thus, Plaintiff reasons that, under the *Robinson* decision, the Village's wrongful post-termination conduct is a part of the Plaintiff's retaliation claims.

In this circuit, as well as in a few other circuits, an employer's post-termination conduct did not constitute actionable retaliatory discrimination under the ADEA or Title VII. *Reed v. Shepard,* 939 F.2d 484, 492–93 (7th Cir.1991); *Robinson v. Shell Oil Co.,* 70 F.3d 325, 332 (4th Cir.1995); *Dranchak v. Akzo America, Inc.,* 1995 WL 470245 (N.D.Ill. 1995). The Seventh Circuit repeatedly held that post-termination conduct did not constitute an adverse employment action supporting a retaliation claim. *See Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 709 (7th Cir. 1995); *Reed v. Shepard,* 939 F.2d 484, 492–93 (7th Cir.1991).

However, the Seventh Circuit later clarified this rule as it was originally set forth in *Reed v. Shepard. See Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881 (7th Cir.1996). The Reed court stated "it is an employee's discharge or other employment impairment that evidences actionable retaliation, and not events subsequent to **and unrelated to his employment.**" 939 F.2d at 493 (emphasis added). Then, in *Veprinsky,* the Seventh Circuit explained the *Reed* holding by stating that the critical language in Reed was the phrase "unrelated to his employment." 87 F.2d at 888. Focusing on this phrase, the *Veprinsky* court concluded that "Reed thus

excludes from the realm of actionable retaliation claims only those post-termination acts which are unrelated to the plaintiff's employment." *Id.* Therefore, the court held actionable under Title VII post-termination acts of retaliation which bear a connection to the plaintiff's employment or attempts to obtain future employment.[1] *Id.*

On February 18, 1997, the Supreme Court addressed the issue of whether post-termination employer conduct could become actionable under the retaliation provision of Title VII and held that a former employee may sue his employer for such conduct pursuant to Section 704(a) of Title VII. *Robinson v. Shell Oil Company,* ── U.S. ──, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

In *Robinson,* Shell fired the plaintiff in 1991. ── U.S. at ──, 117 S.Ct. at 845. Robinson then filed a charge with the EEOC alleging that Shell had fired him because of his race. Id. During the pendency of that charge, Robinson applied for a job with another company. *Id.* That company called Shell for an employment reference and allegedly received a negative report on Robinson, which Robinson contended was given in retaliation for his having filed the EEOC charge. *Id.* Robinson then brought suit alleging retaliatory discrimination pursuant to Section 704(a) of Title VII. *Id.* at ── ── ──, 117 S.Ct. at 845–46. Section 704(a) provides that it is unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have availed themselves of Title VII's protections. *Id.*

After reviewing the language and context of the statute, the Court concluded that the term "employees" as used in the retaliation provision of Title VII was ambiguous as to whether it excluded former employees. *Id.* at ── ── ──, 117 S.Ct. at 846–48. Based on this ambiguity, the Court undertook its own analysis and interpreted the term "employees" to include past as well as present employees. *Id.* at ── ── ──, 117 S.Ct. at 848–49. The Court found that the inclusion

of former employees within the coverage of Section 704(a) was consistent with the section's primary purpose of maintaining unobstructed access to the statute's remedial mechanisms and concluded that to find otherwise would eviscerate much of the protection provided by that section. *Id.* at ── ── ──, 117 S.Ct. at 848–49. The Court noted that Section 704(a) specifically protects employees from retaliation for filing a "charge" under Title VII, and a "charge" alleging unlawful discharge under Section 703(a) would necessarily be brought by a former employee. *Id.* at ──, 117 S.Ct. at 848. Thus, the Court concluded that, to fully protect employees from retaliation arising from the employee's filing of charges with the EEOC, the term "employee" must include both past and present employees. *Id.* at ──, 117 S.Ct. at 848. Consequently, the Court held that, because the term "employees" as used in Section 704(a) of Title VII includes past employees, Robinson was entitled to sue Shell for its allegedly retaliatory post-employment actions. *Id.* at ──, 117 S.Ct. at 848.

In the wake of the Court's holding in *Robinson,* there are two issues relevant to the Plaintiff's motion that remain to be addressed: (1) whether the Court's holding in *Robinson* applies with equal force to post-termination retaliation under the ADEA and/or the ADA and (2) whether the Defendant's post-termination conduct was related to the Plaintiff's employment or attempts to obtain employment. Each issue will be discussed below.

1.  *Whether the Supreme Court's Holding In Robinson Applies Equally To Post–Termination Retaliation Under the ADEA.*

While the Court's holding in *Robinson* was based on retaliation arising out of Title VII, the retaliation provisions and the definitions of employees contained in the ADEA and ADA very closely parallel the corresponding provisions in Title VII.[2] In fact, in holding

---

1.  The court mentioned a bad reference given by the defendant/employer to a plaintiff's potential future employer as an example of post-termination conduct related to the plaintiff's employment or attempts to obtain new employment.

2.  Under all three Acts, the term "employee" is defined as "an individual employed by an employer." 29 U.S.C. § 623(f) (ADEA); 42 U.S.C. § 12111(4)(ADA); 42 U.S.C. § 2000e(f) (Title VII). Additionally, although there are differences in the wording of each Act's retaliation

that there was no cause of action under the ADEA for post-termination employer conduct, the *Dranchak* court (in a decision prior to *Robinson*) found that the retaliation section of Title VII contained language identical to that in the corresponding provision of the ADEA and therefore concluded that the Seventh Circuit would analyze liability for retaliatory conduct under the ADEA in the same manner it analyzed such liability under Title VII. 1995 WL 470245 at *7. Indeed, in *Veprinsky*, the Seventh Circuit itself noted that:

> With exceptions that are immaterial here, the term "employee" is defined [in the ADEA] as an "individual employed by an employer," § 630(f), just as it is in Title VII. The anti-retaliation provision of the ADEA ha[s] been recognized as "parallel to the anti-retaliation provision of Title VII and cases interpreting the latter provision are frequently relied upon in interpreting the former."

87 F.3d at 884 fn. 1, *quoting Passer v. American Chemical Society,* 935 F.2d 322, 330 (D.C.Cir.1991).

█ Based on the similarities between the relevant provisions of the ADEA and Title VII and on the parallel interpretations often given to these provisions, the Court believes it highly likely that the ability to claim retaliation under the ADEA for post-termination employer conduct will be a secondary effect of the Supreme Court's holding in *Robinson.* While it is less clear whether this effect will carry over to claims under the ADA, cases exist which construe provisions of the ADA by looking to the construction of similar provisions under Title VII. *See e.g., Haltek v. Village of Park Forest,* 864 F.Supp. 802, 803 (N.D.Ill.1994) (addressing whether the term "employer" in the ADA and Title VII includes supervisory personnel such that a supervisor could be subject to personal liability under those Acts); *Eckles v. Consolidated Rail Corporation,* 890 F.Supp. 1391, 1403 (S.D.Ind.1995) (court looked to Title VII's

treatment of seniority systems to interpret the ADA with respect to these issues). The existence of such cases support the theory that post-termination employer conduct will also be actionable under the retaliation provision of the ADA. Consequently, the allegations in Count XVII are not only the basis for the Plaintiff's state law Mental Health Act claim, but are also part of Plaintiff's federal retaliation claims under the ADEA and the ADA. The claim contained in Count XVII is therefore part of the same case or controversy as the ADEA and ADA retaliation claims already before the Court and is within the Court's supplemental jurisdiction.

2. *Whether the Defendant's Post–Termination Retaliatory Conduct Was Connected To The Plaintiff's Employment.*

█ Although the *Robinson* Court did not specifically address whether the employer's post-termination conduct must be connected to the plaintiff's employment or efforts to obtain future employment, the factual background in *Robinson* involved an incident where the plaintiff's ex-employer gave a negative reference to the Plaintiff's potential future employer; an action that clearly affected the plaintiff's ability to obtain new employment. In light of the factual context from which the *Robinson* decision arose and the Seventh Circuit's holding in *Veprinsky,* which remains intact after *Robinson,* this Court concludes that an employer's post-termination conduct must bear some nexus to the plaintiff's employment or efforts to secure future employment to be actionable retaliation.

█ Thus, in order to ascertain whether the Plaintiff's proposed amendment would be futile for failing to state a claim under the *Robinson* holding, the Court must decide whether the Defendant's post-termination conduct was connected to Plaintiff's employment or future employment. In the instant case, Jones' disclosure to Plaintiff's past co-workers of confidential information regarding

---

provision that are the result of word order or word choice, all of the provisions essentially provide that it is unlawful for an employer to discriminate against any of his employees (or, in the case of the ADA, against any individual) who opposes any practice made unlawful by the Act

or because such individual has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation under the Act. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e–3(a) (Title VII); 42 U.S.C. § 12203(a)-(b)(ADA).

the Plaintiff's treatment, condition, mental health and stability constitutes the Village's alleged post-termination retaliatory conduct. The Court concludes that such conduct is related to the Plaintiff's employment. In this case, the Plaintiff seeks reinstatement to his former position. Assuming the truth of the Plaintiff's allegations, his co-workers' knowledge about his condition and their knowledge of Jones' professional opinion on his mental health and stability will undoubtedly affect Plaintiff's ability to successfully return to his former position. Consequently, the Court finds that the Plaintiff's allegations regarding Defendant's post-termination conduct are within the ambit of actionable retaliatory conduct. The Plaintiff's proposed amendment is therefore not futile.

The Court next turns to the Defendant's second argument in order to discern if there are any compelling reasons for the Court to decline to exercise its supplemental jurisdiction in this case.

### B. There Are No Compelling Reasons For the Court To Decline To Exercise Its Jurisdiction.

■■■ In the alternative, Defendant argues, that even if the Court does have supplemental jurisdiction, it should decline to exercise its jurisdiction pursuant to 28 U.S.C. § 1367(c). Under that section of the United States Code, a court may refuse to exercise its supplemental jurisdiction based on the existence of compelling reasons for declining jurisdiction.[3] Defendant contends such reasons exist in this case. In support of this contention, Defendant states that the parties have already engaged in extensive discovery which is scheduled to close next month. Defendant asserts that the inclusion of the new count will thwart the interests of judicial economy because certain witnesses will have to be redeposed. Furthermore, Defendant asserts that the addition of the new count will prejudice potential Defendant Jones because he has not participated in the discovery that has occurred to date. Thus, Defendant concludes that the Court should decline jurisdiction based on the presence of these compelling reasons.

In addressing the above arguments, Plaintiff asserts that those witnesses already deposed whose testimony may be relevant to Count XVII are Village employees who are within the control of the Defendant. Thus, Plaintiff asserts that there is no greater burden placed on Defendant if Plaintiff pursues this claim in federal court rather than in state court. Additionally, Plaintiff contends that pursuit of this claim here only minimally prejudices Jones because Jones has not yet been deposed and, since he is the person who disclosed the confidential communications, he already knows the "who, what and when" of the relevant facts. Plaintiff contends that, since the same facts underlie both his Mental Health Act claim and his federal retaliation claims and the same witnesses will testify as to both claims, forcing the Plaintiff to pursue the additional claim in state court would result in unnecessary, duplicative litigation. Thus, Plaintiff argues that the Court should exercise its supplemental jurisdiction and grant the Plaintiff's motion for leave to file his Fourth Amended Complaint.

The Court finds exercise of supplemental jurisdiction appropriate in this case. The reasons advanced by Defendant are not "compelling," nor are the circumstances surrounding this motion "exceptional." Although some of the witnesses may need to be redeposed, this situation was unavoidable due to the timing of Plaintiff's discovery of the alleged confidential disclosures. As Plaintiff pointed out, all of the relevant witnesses are Defendant's own employees. Consequently, the prejudice to the Defendant is the same whether the claim is adjudicated in federal or in state court. Additionally, Mr. Jones will suffer minimal prejudice because he will have the opportunity to depose the relevant witnesses at the time those witnesses are redeposed. Thus, the Court finds no compelling reasons to decline jurisdiction over the additional claim.

**3.** Section 1367(c) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

### III. *Conclusion*

For all of the above reasons, the Court concludes that proposed Count XVII falls within the Court's supplemental jurisdiction and that there are no compelling reasons for the Court to decline jurisdiction in this case. The Plaintiff's motion for leave to file a Fourth Amended Complaint is therefore granted.