UNITED STATES of America,
Plaintiff–Appellee,

v.

William Henry STOKLEY, a/k/a Layne Mertz, Defendant–Appellant.

No. 88–5660.

United States Court of Appeals,
Fourth Circuit.

Argued May 12, 1989.

Decided Aug. 2, 1989.

Hunt Lee Charach, Asst. Federal Public Defender (Mary Lou Newberger, Asst. Federal Public Defender on brief), for defendant-appellant.

John Kirk Brandfass, Asst. U.S. Atty. (Michael W. Carey, U.S. Atty. on brief), for plaintiff-appellee.

Before HALL, Circuit Judge, WILLIAMS, United States District Judge for the Western District of Virginia, sitting by designation, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

DUPREE, Senior District Judge:

William Henry Stokley appeals his sentence to a term of six years imprisonment after he pled guilty to destroying by explosives property affecting interstate commerce resulting in personal injury in violation of 18 U.S.C. § 844(i). Since the offense occurred after November 1, 1987, the sentence imposed was governed by the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551, *et seq.* The sole issue on appeal is whether the district court erred in determining that Stokley "physically restrained" the victim in the course of the offense as that term is used within Guideline § 3A1.3. Finding no error in the court's resolution of the issue, we affirm.

## I.

Evidence at the sentencing hearing tended to show that on the evening of December 4, 1987, Stokley and Ms. Deborah Legg were consuming liquor in the couple's house trailer. Sometime between 10:00 and 11:00 p.m. they began arguing and Stokley struck Legg, causing a black eye and a swollen face. Stokley then carried Legg from the living room to a bedroom in the trailer while she screamed and struggled. He threw Legg on the bed, ordered her to pack his clothes, and threatened to "kick her face in." After Legg ran out of bags in which to pack Stokley's clothes, she left the bedroom and went into the kitchen for more bags. Stokley threatened Legg with a knife, walked her back into the

bedroom and told her not to leave. Stokley later returned to the bedroom with a pipe bomb which he had manufactured. While holding the bomb in one hand and a cigarette lighter in the other Stokley said, "If I can't get you by electricity, I will get you this way." He then lit the bomb and placed it on a dresser beside the door, about a foot from where Ms. Legg sat on the bed. Ms. Legg got up from the bed and started toward the door in order to escape. Stokley shoved her back and said, "Oh, no, you don't." The bomb exploded, substantially damaging the trailer and injuring both Ms. Legg and Stokley. Ms. Legg further testified that before the bomb exploded, Stokley was standing with his hand on the door as if he was going to leave the room.

Stokley pled guilty to destroying a building by an explosive device in violation of Section 844(i). Under Guideline § 2K1.4, Stokley's base offense level was six. The district court added eighteen additional levels pursuant to Guideline § 2K1.4(b)(1), finding that Stokley created a substantial risk of death or serious bodily injury. The district court reduced the offense level by two pursuant to Guideline § 3E1.1 because Stokley accepted responsibility for his acts. However, applying the victim related adjustment, the district court increased the offense level by two under Guideline § 3A1.3 finding that Stokley had physically restrained Legg in the course of the offense. Thus, the net offense level was twenty-four and when coupled with a criminal history category of III, a sentencing range of sixty-three to seventy-eight months was warranted. The district court's sentence of six years fell within this range.

Stokley argues that the district court erred in finding that he "physically restrained" Ms. Legg during the course of the offense, contending that his behavior does not come within the language of Guideline § 3A1.3.

## II.

Review of the district court's application of the guidelines to the facts is

controlled by 18 U.S.C. § 3742(e) which provides that the Court of Appeals shall give due deference to such a determination. The deference due a sentencing judge's application of the guidelines depends on the circumstances of the case. *United States v. Daughtrey*, 874 F.2d 213 (4th Cir.1989). Review of a primarily factual issue is governed by the clearly erroneous standard while a question of the legal interpretation of a guidelines term is closer to de novo review. *Id.* On mixed questions of fact and law, there is no bright-line standard but rather a sliding scale depending on the "mix" of the mixed question. *Id.*

In the instant case, Stokley does not really attack the factual undergirding of his sentence but rather contends that his behavior did not fall within the legal definition of the term "physically restrained."

■ Guideline § 3A1.3 simply states: *"Restraint of Victim—*If the victim of a crime was physically restrained in the course of the offense, increase by 2 levels." Commentary Application Note 1(i) to Guideline § 1B1.1 states: " 'Physically restrained' means the forcible restraint of the victim such as being tied, bound, or locked up." By use of the words "such as," it is apparent that "being tied, bound, or locked up" are listed by way of example rather than limitation.

In the absence of a contrary indication, the court must assume the drafters of a statute intended to convey the ordinary meaning attached to the language. *Talley v. Mathews*, 550 F.2d 911 (4th Cir.1977). "Physical" means "of or relating to the body." Webster's Third New International Dictionary (1966). "Restrain" is defined as "1. To control: check. 2. To take away freedom or liberty of. 3. To restrict or limit." Webster's Second New Riverside University Dictionary (1984). Forcible is defined as "1. Achieved by use of force." *Id.*

■ Under these definitions, we are persuaded that Stokley did indeed physically restrain Ms. Legg during the course of his offense. Ms. Legg was clearly prevented from leaving the room when the fuse was lit. Just as clearly, when Stokley prevented Legg from leaving the room by standing in the door and pushing her back she was forcibly restrained. Stokley made his intent clear by stating, "Oh, no, you don't." That a victim need not be tied or bound up so that his movement is completely restricted is made apparent by the "locked up" example given in the commentary.

■ It should be noted that the physical restraint involved in this case was not an element of the offense, was not specifically incorporated into the base offense level and was not listed as a specific offense characteristic, any of which would have rendered the guideline inapplicable. *See* Application Note 2, Commentary to Guideline § 3A1.3. The underlying offense set out in 18 U.S.C. § 844(i) merely requires that personal injury follow as a direct or proximate result of the prohibited conduct. In this case, it was the explosion of the pipe bomb which caused the injury. Nor is it necessary to show the injury resulted from physical restraint in conjunction with the explosion under Section 844(i). Similarly, the finding that Stokley knowingly created a substantial risk of death or serious bodily injury, considered as a specific offense characteristic under Guideline § 2K1.4, did not foreclose consideration of the victim-related adjustment since Guideline § 2K1.4(b) does not require a finding of physical restraint either.

■ In addition, application of the victim-related adjustments is not precluded by the Chapter 3, Part A introductory comments requiring that the adjustments are to be treated as specific offense characteristics and Guideline § 2K1.4(b)'s instruction to apply the "greatest" specific offense characteristic. Guideline § 2K1.4(b) requires application of the "greatest" listed characteristic and does not refer to the victim-related adjustments of Chapter 3, Part A. Therefore, in the absence of a specific prohibition, and assuming they are otherwise applicable, the victim-related adjustments will always be cumulative to specific offense characteristics of Chapter 2. *See* Guideline §§ 1B1.1, 1B1.4 (including Chapter 3 adjustments in determining of-

fense level after arriving at base offense level and specific offense characteristics from Chapter 2).

Having concluded the district court did not err in its interpretation of the term "physically restrained" and finding plenary evidence to support application of the guideline, we affirm the decision of the district court.

AFFIRMED.