CSX CORPORATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 3:95CV1004.

United States District Court,
E.D. Virginia,
Richmond Division.

June 25, 1996.

James Linwood Sanderlin, McGuire, Woods, Battle & Boothe, Richmond, VA, Courtney George Hyers, CSC Transportation, Inc., Richmond, VA, and James D. Bridgeman, McGuire, Woods, Battle & Boothe, Washington, DC, for plaintiff.

Robert William Jaspen, Assistant U.S. Attorney, Richmond, VA and Gregory S. Hrebiniak, U.S. Department of Justice, Washington, DC, for defendant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter came before the Court for a bench trial but was converted to a hearing on cross motions for summary judgment pursuant to Fed.R.Civ.P. 56(c), the parties having agreed that the matter presents no material questions of disputed fact. The case presents the question of whether 26 U.S.C.

§ 56(f)(2)(J) (1986), of the Tax Reform Act of 1986, required for tax year 1987 that a certain loss be used to reduce Adjusted Net Book Income ("ANBI") for purposes of calculating corporate income tax liability under the Alternative Minimum Tax ("AMT") scheme of the Act. The loss was reflected in CSX's financial statements of 1985 pursuant to Generally Accepted Accounting Principles ("GAAP") but for tax purposes could not be realized until tax year 1987. The IRS disallowed the adjustment pursuant to its regulations under the Act, 26 C.F.R. § 1.56–1(a)(4). Because the clear language of § 56(f)(2)(J) mandates that all omissions from Book Income be used to adjust ANBI, the Court concludes that the IRS's regulation is invalid, the adjustment to ANBI should have been allowed and CSX is entitled to a refund with interest.

## I

The undisputed facts being set out virtually identically in each party's brief, what follows is a bare outline. The case involves a request for refund for the year ended December 31, 1987. CSX made a timely claim in the exact amount of $4,783,029., which the IRS denied in 1994 and again, on appeal, in April 1995. The refund relates to three tax items, given in approximate terms:

(i) The bulk of the refund sought—$3,903,000—springs from a $954 million restructuring charge incurred by CSX. Under GAAP, CSX was forced to take the charge in the year it decided to undergo the restructuring, which was 1985. Tax accounting requires, however, that CSX could only take the charges, or deduct them, as accrued. CSX accrued a $109,916,780 portion of the charge in tax year 1987.

(ii) The second item—$477,000—derives from an accounting error by a subsidiary, CSX Realty, in the years before 1987. CSX discovered the error in 1988 just before the 1987 tax return was filed, and therefore applied the portion of the error attributable to 1987. That portion was a loss of $13,437,764.

(iii) The third item—$402,000—comes from a change in the method of depreciation used by a small subsidiary railroad,

Nashville & Decatur R.R. Co. The change created a loss of $11,331,015 for 1987.

The issues in the case are the same as to all three parts of the CSX refund claim. For simplicity and because the 1987 portion of the restructuring charge is the largest item, the Court refers to all three items as "the Special Charge."

## II

The case concerns the section on Adjustments to Net Book Income, 26 U.S.C. § 56(f)(2)(J) (since repealed), which simply read:

> Secretarial authority to adjust items. Under regulations, adjusted net book income *shall* be properly adjusted to prevent the omission or duplication of *any* item.

(Emphasis added). In response to the statute, the Secretary of the Treasury promulgated 26 C.F.R. § 1.56–1(d), which stated:

> Adjustments to net book income—(1) In general. Adjusted Net Book Income is computed by making the adjustments described in the paragraph (d) to net book income (as defined in paragraph (b) of this section). No adjustment may be made to net book income except as provided in this paragraph (d).

The regulation then went on to list, in subparts (d)(4)(ii) through (d)(4)(vii), various events for which adjustments would be allowed. The parties agree that CSX's Special Charge is not allowed as an adjustment under the regulations. The question, then, is whether the regulations are in violation of the statute.

In a nutshell, the positions of the parties are these. CSX claims that because its Special Charge occurred for GAAP purposes in 1985, it is "omitted" from CSX's Book Income for 1987 and therefore "shall" be used to "adjust" (reduce) CSX's 1987 ANBI. The IRS responds with four arguments: (i) CSX's problem is not an omission but rather a timing difference; (ii) if this is an omission, Congress did not intend for pre–1986 omissions to be covered by the statute; (iii) the minimum tax credit of 26 U.S.C. § 53 already compensates for the unfair economic impact of which CSX complains; and (iv) "shall" is

not a mandatory term and "any" does not mean "every." The Court examines the IRS arguments in that order.

■ In examining the government's definition of omissions and timing differences, the Court first revisits the principles of statutory construction. "In examining statutory language, generally, words are given their common usage" and "courts must apply the statute as written." *Robinson v. Shell Oil Co.*, 70 F.3d 325, 328 (4th Cir.1995). Inquiry must cease if the language is unambiguous and the statutory scheme is consistent. *Id.* Given this principle, the Court briefly examines the legislative history offered by the government but only does so to emphasize that the legislative history and code section do not conflict. As the government emphasized, "[a]n omission or duplication for an item of income or expense occurs where the item is *recognized* either not at all or more than once in determining the adjusted net book income of the taxpayer." Staff of the Joint Committee on Taxation, *General Explanation of the Tax Reform Act of 1986*, H.R. 3838, 99th Congress, at p. 456 (emphasis added). The government argues—correctly—that CSX did not omit the Special Charge from its book income, since it took the charge in full in 1985. However, CSX never recognized that charge.

The Tax Code scheme is consistent within itself, per *Robinson*, but it is quite distinct from financial accounting under GAAP. Recognition is a term of art and one of the keys to that distinction: income and losses are generally recognized, or counted for tax purposes, only when realized, meaning when accrued or made measurable by some event. For example, GAAP forced CSX to take the entire loss of the Special Charge against its book income of 1985, and given the time value of money, CSX would have preferred to take a tax loss that year as well; however, the Code permits taxpayers to take losses only in the year the loss actually accrued— here, 1987. Therefore CSX left the Special Charge out of its 1985 income for tax purposes—*recognition* purposes—but not for financial accounting purposes. With no Code definition of omission, the Court turns to

ordinary meaning per *Robinson*. "Omitted" is the obvious synonym of "left out."

■ The government argues that because the final regulations define timing differences to be separate from omissions, and because the IRS has defined the Special Charge to be a timing difference, the Court must defer to the government's position. The Court must indeed defer to the Secretary's interpretation where that interpretation is reasonable and not plainly inconsistent with the Code. *See Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). However, where the statutory language is plain, there is no ambiguity requiring—or permitting—secretarial interpretation. The Secretary cannot inject ambiguity into the clear language of § 56 by a mere definition in a mere regulation, at least not here where the language and even intent of Congress seem clear. The Special Charge of 1985 is an omission per § 56.

■ The government next argues that Congress did not intend for pre–1986 omissions to be covered by § 56. Two responses put this argument to rest. First, if Congress had such a limitation in mind, why did it not put the stricture into the statutory language which, as *Robinson* held, is understood both by drafters and courts to be the final arbiter of intent? Second, as already explained, Tax Code and financial accounting are separate beasts. True, the Special Charge here was taken in full for financial accounting purposes before the 1986 date of the Code section— seemingly a prior period. But the economic impact—actual losses—and the tax consequences—tax losses that CSX seeks—occurred in the *current* year, 1987, and *not* in 1985. Therefore any loss attributable to 1985 or 1986 certainly would not be used to calculate 1987 taxes, and CSX has not tried to do so. CSX is merely trying to obey the tax code and have tax recognition when economic realization occurs; therefore, the Special Charge omission falls within § 56.

The government's third argument, that a § 53 tax credit would compensate for the economic injustice of the IRS's disallowance of the Special Charge, is a non sequitur. While it may be fair to take with one hand and give with the other, fairness does not

excuse a violation of the statutory language. The Court has found such a violation and thus the purported fairness of a § 53 tax credit is irrelevant.

■ Finally, the Court turns to the government's most telling argument, its attempt to define "shall" and "any" to mean "may" and "only some." In support of its reasoning, the government at oral argument offered that the persons drafting the regulations had no idea what adjustments to make, that the examples given in the legislative history were an "absurdity" and that the resulting confusion showed how little the Congress knew what it was doing. The government chose that reasoning and the distinction between "any" and "every" as its finale and coup de grace; this blade, however, has scant lustre and no edge. In plain language, as per *Robinson* § 56 is presumed to be, the phrase "shall be properly adjusted to prevent the omission or duplication of any item" can only mean "must be adjusted to prevent duplication and to include every otherwise omitted item." To further discuss the point is to give the matter unwarranted respect; however, the government's emphasis of so weak an argument shows its understanding of the flaw in its position: the government must try to redefine the statute because the Secretary's regulation does not follow ordinary meaning.

The regulations provide that no adjustment will be made unless the omission or duplication fits within paragraph 26 C.F.R. § 1.56–1(d); however, paragraph (d) provides examples only of duplications. While the government at argument offered examples of possible omissions, those examples were conceded "absurdities" such as major accounting errors, and regardless, it is by no means clear that the examples would be permitted given paragraph (d). In fact, paragraph (d) permits no adjustment for any type of omission; therefore, the government must argue that the statute does not mean what it says or else the Secretary will be found to have read the word "omission" out of the statute, exceeding his authority. The Court finds that by preventing adjustments for all omissions in 26 C.F.R. 1.56–1(d), the Secretary did indeed violate 26 U.S.C. § 56.

Though emphasized by the plaintiff, the Court does not dwell on the government's attempt to explain away its responses to CSX's request for admissions. Neither does the Court take a position, as the government appears to ask for, on the wisdom of § 56 or the Alternative Minimum Tax scheme. In the final analysis, the wisdom of Congress's 1986 corporate tax system is the bailiwick of Congress, and the Court's role is only to apply the clear language that Congress adopted after months of detailed debate. That language in § 56 required the Secretary to create regulations to adjust book income so that every omission would be prevented. This the Secretary did not do, and since the Secretary thereby violated the statute, the Court disregards his regulations in that particular and looks instead to the Code. Under the clear language of § 56, CSX's Special Charge was omitted from 1987 book income; therefore, CSX's 1987 ANBI must be adjusted to include the Charge. The plaintiff's motion for summary judgment must be granted.

### III

The Court finds that CSX's Special Charge for 1987 was an omission within the plain meaning of 26 U.S.C. § 56, and that therefore the IRS's disallowance of an adjustment pursuant to 26 C.F.R. § 1.56–1(a) & (d) was error because regulation paragraph (d) itself is in error. The government's motion for summary judgment is denied and the plaintiff's is granted, and judgment for CSX will be entered in the amount of $4,783,029 plus interest.