**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY ANNA GNADT,
Plaintiff-Appellant,

v.

ERNEST G. CASTRO; CASTRO FAMILY,
INCORPORATED, t/a Tino's Sports

Lounge, t/a Mama's Italian
Restaurant,
Defendants-Appellees.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

No. 95-1369

On Remand from the United States Supreme Court.
(S. Ct. No. 95-1981)

Argued: June 5, 1997

Decided: July 10, 1997

Before RUSSELL, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Michael Clifford, MCLEOD, WATKINSON &
MILLER, Washington, D.C., for Appellant. John Foster Suhre,
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Wash-
ington, D.C., for Amicus Curiae. Gregory Beckwith, PHILLIPS,

BECKWITH & HALL, Fairfax, Virginia, for Appellees. **ON BRIEF:** Mona Lyons, MCLEOD, WATKINSON & MILLER, WASHING-TON, D.C., for Appellant. John P. Rowe, Acting General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

We consider this case on remand from the Supreme Court. See Gnadt v. Castro, 117 S. Ct. 1077 (1997). The sole question now at issue is whether a former employee can prevail on a retaliation claim against a former employer without proving that the alleged retaliatory act had any effect on the employee. The district court held that an employee could not prevail on a retaliation claim in this circumstance, and we affirm.

In January 1992, while attending law school, Mary Anna Gnadt began working part-time as a waitress and bartender at Tino's Sports Lounge in Fairfax County, Virginia. By October 1993, Gnadt had established a work schedule that included bartending during the day on Sunday and on Monday nights, and waitressing on Wednesday nights. But during that month, Tino's hired a new employee, Michael Devine. To accommodate Devine's schedule, the manager of Tino's -- Bernardo Terazzas -- informed Gnadt on October 15, 1993 that her bartending duties would be switched to waitressing. When Gnadt asked Terazzas why she could not continue behind the bar while Devine acted as a waiter, Terazzas responded that it was "too tacky to have a man as a cocktail waitress and a woman behind the bar." The shifted responsibilities would have reduced Gnadt's wages by about $2.00 an hour.

2

Unhappy with the reassignment, Gnadt attempted to contact Tino's owner, Ernest Castro, leaving messages at home and at work for him. On October 17, 1993, she reached him and ascertained that although there were no problems with her performance, the reassignment was final. Upon learning this, Gnadt resigned from her employment at Tino's. Less than a month later, she filed a charge of gender discrimination with the Fairfax County Human Rights Commission, which forwarded the complaint to the Equal Employment Opportunity Commission (EEOC).

When he heard of the discrimination charge, Castro made repeated efforts to contact Gnadt by telephone. In a November 27, 1993 telephone call, Castro angrily demanded to know what Gnadt thought she was doing. Castro left messages on Gnadt's answering machine to which she did not respond. Gnadt then asked a lawyer, Martin Mooradian, for whom she worked part-time as a law clerk, to write Castro requesting that he leave her alone.

On December 2, 1993, Castro left a message on an answering machine at the home where Gnadt was housesitting, in which he said:

> If you want to pursue this . . . all I can tell you is I can fry you . . . . I can make life very miserable for you in this Northern Virginia area, especially in the legal field. I know a lot of lawyers and after I get through talking with them, your prospects for employment with any of them will be very, very, very slim.

Castro also telephoned Mooradian and told him that Castro knew "just about every attorney in Fairfax and he was going to tell every one of them that he knew [Gnadt] and about how unreliable and . . . disloyal she was as an employee so that she would never get another job as an attorney."

Mooradian testified that Gnadt's performance at the law firm suffered during the period when she received Castro's telephone calls; however, he could not rule out the possibility that other factors caused this decline in performance. Gnadt testified her entire social life was affected by the phone calls, that she was "scared to death" that Castro "would really try to sabotage [her] attempts to find employment in

3

Fairfax," and that she thought Castro's message "indicated that he thought that he would be able to crucify me in court, so to speak." Gnadt did not submit any other evidence that the telephone calls affected her in any way. Moreover, Gnadt stated that she never sought assistance from a psychiatrist, psychologist, counselor or any sort of physical or mental therapy, or medication because of Castro's telephone calls. She acknowledged that she had no knowledge that Castro contacted any prospective employer or attempted in any way to obstruct her ability to obtain employment. She conceded that during and after the time she received the calls, she continued to attend law school and maintain her previous good grade average, to work part-time in the law firm, and to maintain her relationship with her boyfriend. Indeed, in response to an interrogatory request, Gnadt did not list a single activity of any kind that she was unable to perform as a result of Castro's telephone calls.

Gnadt amended her discrimination charge to add a retaliation claim and after the EEOC issued a right to sue letter, she filed suit in federal court against Castro, Castro Family, Inc., t/a Mama's Italian Restaurant and Tino's Sports Lounge. In addition to a state law claim for intentional infliction of emotional distress, Gnadt alleged that Castro violated 42 U.S.C. § 2000e-2(a)(1) (1994) and 42 U.S.C. § 1981a (1994) in discriminating against her on the basis of gender by altering her work schedule and decreasing her pay and constructively discharging her and that he violated 42 U.S.C. § 2000e-3(a) (1994) and 42 U.S.C. § 1981a in retaliating against her for filing a discrimination charge.

The district court granted Castro judgment as a matter of law on all four counts at the conclusion of Gnadt's case. In ruling on the retaliation claim, the court assumed that a former employee, like Gnadt, could bring a retaliation claim under Title VII against a former employer. Gnadt appealed the entry of judgment against her on the gender discrimination and retaliation claims.

We vacated the district court's judgment as to the discrimination claim and remanded it for trial. See Gnadt v. Castro, 79 F.3d 1141 (4th Cir. 1996) (unpublished per curiam opinion). We held Gnadt's appeal on the retaliation claim was foreclosed by our decision in Robinson v. Shell Oil Co., 70 F.3d 325, 330 (4th Cir. 1995) (en banc),

4

in which we found former employees not entitled to the protection of Title VII. That decision was subsequently reversed by the Supreme Court. See Robinson v. Shell Oil Co., 117 S. Ct. 843 (1997) (holding that "employees" under Title VII include former employees). The Supreme Court then granted certiorari and vacated and remanded our opinion in the case at hand so that we could reconsider it in light of Robinson. See Gnadt v. Castro, 117 S. Ct. 1077 (1997).

Because, as noted above, the district court tried the Title VII retaliation claim assuming that a former employee could bring such a claim against a former employer, both parties acknowledge that the Supreme Court's holding in Robinson does not have any effect on our review of this case.

Gnadt and the EEOC believe that this case does present the question of whether a former employer's "threats" of "adverse action" alone, where the employer does not follow through on the threats, but the employee is otherwise affected by them, can be a basis for a retaliation claim. However, a close examination of the record reveals that not even this issue is properly before us.

The district court explained its rationale for entering judgment as a matter of law on the retaliation claim as follows:

> [W]hat the Court has to look at with retaliation is whether or not there is any evidence in the case that the defendant interfered with any prospective employment opportunities for the employee, and there is absolutely no evidence of that other than a threat by Mr. Castro to keep the plaintiff from ever getting a law job.
>
> [Gnadt], herself, admitted several times . . . that she had no evidence whatsoever that any phone calls, or any contacts, or any actions had been taken by the defendant to in any way interfere with prospective business, educational, or other kinds of activities. And therefore, I find no factual basis to support the plaintiff's case on the retaliation issue.

Thus, the district court did not just hold that Gnadt's retaliation claim failed for lack of evidence that Castro acted to interfere with Gnadt's

5

prospective employment opportunities. Rather, the district court also found that Gnadt had not proved <u>any</u> harm to or even effect on her resulting from Castro's threat, i.e. no "interference" with Gnadt's "prospective business, educational, or any other kinds of activities." <u>See</u> Fed. R. Civ. P. 52(c) (district court's entry of judgment on partial findings while conducting a bench trial must be supported by findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a)).

Of course, Gnadt did present her own testimony that Castro's threat affected her social life and "scared" her because she believed he would "sabotage" her efforts to find future employment and Mooradian's testimony that her performance at work suffered, which provide some evidence to the contrary. However, the district court by necessity found that, in view of Gnadt's numerous concessions as to lack of proof of any injury, this evidence was insufficient -- that Gnadt had failed to demonstrate any harm to or even effect on herself from Castro's threats. As indicated in our summary of the facts above, clearly there was evidentiary support for this finding. <u>See</u> Fed. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of [sic] the credibility of the witnesses."). Indeed, on this record it would be impossible to find that Gnadt proved any measurable harm to or even effect on her resulting from Castro's threat.

In view of this well-supported factual finding, the only appellate argument available to Gnadt is that an employer's threats alone, which the employee is unable to prove had <u>any effect at all</u> on her, can constitute a basis for a Title VII retaliation claim. Neither EEOC nor Gnadt has cited any case so holding and we have found none. It is difficult to envision such a case in view of the fact that Title VII, as amended in 1991, permits the award of compensatory damages only for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," 42 U.S.C. § 1981a(b)(3), <u>not</u> for no loss at all. Even violation of a constitutional right does not entitle a plaintiff to compensatory damages without proof of injury. <u>See Memphis Community Sch. Dist. v. Stachura</u>, 477 U.S. 299, 308 (1986) ("Where no injury was present, no `compensatory' damages could be awarded.").

6

For these reasons, the judgment of the district court is

AFFIRMED.

7