79 F.3d 1141
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mary Anna GNADT, Plaintiff-Appellant,
v.
Ernest G. CASTRO; Castro Family, Incorporated, t/a Tino's
Sports Lounge, t/a Mama's Italian Restaurant,
Defendants-Appellees.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Amicus Curiae.
 No. 95-1369.
 United States Court of Appeals, Fourth Circuit.
 Argued: January 31, 1996.
Decided: March 12, 1996.
 
 ARGUED: Mona Lyons, McLeod, Watkinson & Miller, Washington, DC, for Appellant. Gregory Beckwith, Phillips, Beckwith & Hall, Fairfax, VA, for Appellees. ON BRIEF: John M. Clifford, McLeod, Watkinson & Miller, Washington, DC, for Appellant. John P. Rowe, Acting General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, John F. Suhre, Equal Employment Opportunity Commission, Washington, DC, for Amicus Curiae.
 Before RUSSELL and HAMILTON, Circuit Judges, and BLAKE, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Mary Gnadt (Gnadt) appeals the district court's entry of judgment in favor of her employer in her suit alleging sex discrimination and post-employment retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 1994 and Supp.1995). For the following reasons, we affirm the district court's entry of judgment with respect to Gnadt's post-employment retaliation claim, but vacate the district court's entry of judgment with respect to Gnadt's sex discrimination claim and remand the case for further proceedings.
 
 I.
 
 2
 Beginning in January 1992, while attending law school, Gnadt worked part-time as a waitress and later as a bartender at Mama's Italian Restaurant and Tino's Sports Lounge (Tino's) until her resignation from Tino's in October 1993. Upon her hiring, Gnadt was assigned both waitressing and bartending duties. Beginning in Sep tember 1993, Gnadt was assigned only bartending duties. Specifically, Gnadt was assigned as the sole bartender during the day shift on Sundays and the night shift on Mondays. Bernardo Terrazas (Bernardo) was Gnadt's supervisor on the Sunday day shift and J.P. Forry was Gnadt's supervisor on the Monday night shift.
 
 
 3
 As a result of understaffing caused by two employees resigning, Tino's hired two additional bartenders in October 1993--a male (Michael Devine) and a female (Susan Gonzales). On October 15, 1993, Bernardo informed Gnadt that she had been reassigned. The reassignment meant that Gnadt would no longer bartend during the day shift on Sundays or the night shift on Mondays, but would waitress during both the day shift on Sundays and the night shift on Fridays. Michael Devine replaced Gnadt as the bartender during the day shift on Sundays and the night shift on Mondays. Gnadt questioned Bernardo about the reason for her reassignment. According to Gnadt, Bernardo responded: "Well, we just decided to." (J.A. Vol. II 43). The reassignment would provide Gnadt with the same number of working hours but at a lesser hourly rate of pay. Bartenders made $4.50 per hour while the waitstaff only made $2.01 per hour. Gnadt's remuneration from tips would stay essentially the same because at Tino's the waitresses and bartenders pooled their tips at the end of each shift and split the pooled amount equally.
 
 
 4
 Upset with her reassignment, which she viewed as a demotion, Gnadt made numerous unsuccessful attempts between October 15 and 17, 1993 to contact Ernest Castro, the owner and general manager of Tino's, to discuss her reassignment. Unable to reach Ernest Castro, Gnadt contacted Bernardo. Gnadt asked Bernardo why Michael Devine could not wait tables during the day shift on Sundays and the night shift on Mondays while she remained the bartender on those shifts. According to Gnadt, Bernardo responded:"[I]t would be too tacky to have a man cocktail waitress and a woman behind the bar." (Id. at 49). Gnadt then asked Bernardo whether he was kidding. Bernardo stated: "Well, I didn't mean it that way." (Id. at 50).
 
 
 5
 On the evening of October 17, 1993, Gnadt reached Ernest Castro by telephone. At Gnadt's request, Diane Fallon, Gnadt's roommate and part-time waitress at Tino's, listened in on the conversation. Gnadt asked Ernest Castro why she had been demoted and whether the demotion was permanent. Ernest Castro told Gnadt that he did not consider the reassignment a demotion and that the reassignment was final. At that point, Gnadt informed Ernest Castro that she resigned from working at Tino's. Gnadt never returned to work at Tino's.
 
 
 6
 Less than a month later, Gnadt filed a charge of employment discrimination with the Fairfax County Human Rights Commission alleging that the removal of her bartending duties was based on her sex. The claim was forwarded to the Equal Employment Opportunity Commission (EEOC). Two weeks later, Ernest Castro telephoned Gnadt late at night and angrily demanded to know why she had filed a charge of employment discrimination against him. Gnadt refused to discuss the charge with him. Thereafter, Ernest Castro left several messages on Gnadt's answering machine requesting that she telephone him.
 
 
 7
 At Gnadt's request, Martin Mooradian, an attorney for whom Gnadt was working as a law clerk, sent a letter to Ernest Castro requesting that he stop pestering Gnadt. Shortly after receiving Mooradian's letter, Ernest Castro left a message on Gnadt's answering machine stating that he would make life miserable for her in the Northern Virginia area, especially in the legal field, if she continued to pursue her allegation of sex discrimination. Ernest Castro subsequently telephoned Mooradian and made similar threats for Mooradian to pass along to Gnadt.
 
 
 8
 In response to Ernest Castro's threats, Gnadt amended her EEOC charge to include allegations of post-employment retaliation. After the EEOC issued a right-to-sue letter, Gnadt filed the present action against Tino's, i.e., Castro Family, Inc., and Ernest Castro (collectively, Tino's). Gnadt's complaint alleged that she was demoted because of her sex, see 42 U.S.C.A. § 2000e-2(a), and that she suffered post-employment retaliation for engaging in protected activities, see 42 U.S.C.A. § 2000e-3(a), both in violation of Title VII. Gnadt's complaint also alleged state law claims of constructive discharge and intentional infliction of emotional distress.
 
 
 9
 The district court conducted a bench trial on January 18, 1995. At the close of Gnadt's presentation of the evidence, Tino's moved for judgment as a matter of law under Federal Rule of Civil Procedure 52(c) on all claims. The district court granted the motion in toto. Specifically, with respect to Gnadt's claim that she was demoted because of her sex, the district court found that Gnadt had met her burden of establishing a prima facie case, but that Tino's had articulated a legitimate, nondiscriminatory reason for the demotion that Gnadt failed to rebut. Gnadt filed a timely notice of appeal. On appeal, Gnadt only challenges the district court's entry of judgment with respect to her claim alleging that she was demoted because of her sex.* She asks that we vacate the district court's judgment with respect to that claim and remand the case for a new trial.
 
 II.
 
 10
 To prevail on her claim of discriminatory demotion based on sex in violation of Title VII, Gnadt must prove by a preponderance of the evidence that Tino's demoted her "because of" her sex. 42 U.S.C.A. § 2000e-2(a)(1). Below, Gnadt proceeded under the familiar threestep proof scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that scheme, once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production shifts to the employer, here Tino's, to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993). If the employer carries this burden of production, the presumption of discrimination "drops out of the picture," see id. at 2749, and the plaintiff bears the ultimate burden of proving both that the employer's asserted reason was pretextual and that the plaintiff's sex was the true reason for the adverse employment action. See id. at 2752. To establish a prima facie case of discriminatory demotion under McDonnell Douglas, Gnadt bore the burden of proving the following elements by a preponderance of the evidence: (1) she was a member of a protected class; (2) she was demoted; (3) at the time of her demotion, she was performing her job at a level that met her
 
 
 11
 employer's legitimate expectations; and (4) following her demotion, she was replaced by someone of comparable qualifications outside the protected class. See Tuck v. Henkel Corp., 973 F.2d 371, 375 (4th Cir.1992), cert. denied, 113 S.Ct. 1276 (1993).
 
 
 12
 The district court disposed of Gnadt's claim of discriminatory demotion under Federal Rule of Civil Procedure 52(c), which provides in pertinent part:
 
 
 13
 If, during a trial without a jury, a party has been fully heard with respect to an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party on any claim ... that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
 
 
 14
 Fed.R.Civ.P. 52(c). We review the district court's findings of fact in support of the granting of a Rule 52(c) motion under the clearly erroneous standard and its conclusions of law de novo. See Carter v. Ball, 33 F.3d 450, 457 (4th Cir.1994).
 
 
 15
 In ruling on Tino's Rule 52(c) motion made at the close of Gnadt's case, the district court found that Gnadt had produced sufficient evidence to establish a prima facie case. Specifically, the district court found that Gnadt, a female, was a member of a protected class, see 42 U.S.C.A. § 2000e-2(a)(1), and based on the lower rate of pay for waitresses as compared to bartenders, the district court found that she had suffered a demotion. Then, based on her experience at Tino's, the district court found that Gnadt was a qualified bartender. Finally, the district court found that Gnadt was replaced by someone of comparable qualifications outside the protected class--that person being Michael Devine. Tino's does not argue that these findings are clearly erroneous.
 
 
 16
 Next, the district court concluded, based solely on the evidence presented in Gnadt's case-in-chief, that Tino's had articulated a legitimate, nondiscriminatory reason for demoting Gnadt. In reaching this conclusion, the district court relied on testimony by Gnadt and hearsay testimony by Diane Fallon, all elicited by Tino's during crossexamination, that Tino's needed to hire additional personnel. The district court also relied on the fact that an employer inherently has discretion to hire personnel to fulfill its personnel needs. Finally, the district court concluded that Gnadt failed to produce sufficient evidence to rebut this legitimate reason or that the true reason for her demotion was because she was female.
 
 
 17
 On appeal, Gnadt contends that she is entitled to a new trial on this claim because Tino's failed to meet its burden of production to articulate a legitimate, nondiscriminatory reason to rebut her prima facie case. See Hicks, 113 S.Ct. at 2747. In response, Tino's argues that it met its burden of production by eliciting certain testimony during its cross-examination of Gnadt and Diane Fallon. In this regard, Tino's points to the following testimony: (1) Gnadt's testimony that two members of the waitstaff had left in the fall of 1993; (2) Gnadt's testimony that it was within management's discretion to hire new personnel; (3) Gnadt's testimony that some tension existed between her and J.P. Forry, her immediate supervisor on Monday nights; and (4) Diane Fallon's testimony that during the conversation she overheard between Gnadt and Ernest Castro, Castro stated that he reassigned Gnadt because he needed to staff his restaurant the best way that he could.
 
 
 18
 For an employer to meet its burden of production to articulate a legitimate, nondiscriminatory reason for its adverse action, the employer must "clearly set forth, through the introduction of admissible evidence, the reasons" for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). Vague explanations are not sufficient. See id. at 258 (stating the employer's explanation of its legitimate reasons must be "clear and reasonably specific"). Furthermore, "the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." Id. at 255 n. 9. Placing this burden of clearly articulating a legitimate reason on the employer serves a dual purpose. First, it enables the employer, by proffering a legitimate reason for the alleged discriminatory action, to rebut the inference of discrimination that arises from proof of the prima facie case. See id. at 258. In addition, the burden of production frames the factual issues with sufficient clarity to afford the plaintiff a full and fair opportunity to demonstrate pretext. Id.; see also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir.1985) ("Were vague or conclusory averments of good faith sufficient to satisfy the employer's burden, Title VII employees seeking to demonstrate pretext would be unfairly handicapped."), cert. denied, 474 U.S. 829 (1985).
 
 
 19
 We agree with Gnadt that the district court erroneously concluded that Tino's met its burden of production to articulate a legitimate, nondiscriminatory reason for demoting her from bartender to waitress. The testimony cited by Tino's, which was relied upon by the district court, is, standing by itself, insufficient to clearly set forth a legitimate, nondiscriminatory reason for Tino's adverse personnel action. First, while the evidence of a need to hire additional personnel may have set the stage for Gnadt's demotion, it does not explain why Tino's decided to demote Gnadt from bartender to waitress. Next, mere acknowledgment by Gnadt that management has the discretion to hire new employees simply begs the question of whether Tino's demoted Gnadt because she was female. Diane Fallon's hearsay testimony that Castro stated that he needed to staff his restaurant the best way that he could similarly begs the same question. Finally, the fact that some tension existed between Gnadt and J.P. Forry does not, without more, explain Gnadt's demotion because the same problem did not exist between Gnadt and Bernardo, yet Michael Devine replaced Gnadt as the bartender during the Sunday day shift, which Bernardo supervised. All that one gleans from this evidence is that Tino's reason for the employment action remains unexplained. And, if the reason for the demotion was unexplained, it follows a fortiori that the district court was not at liberty to enter judgment under Rule 52(c).
 
 
 20
 We are not unmindful that a judgment in favor of Tino's at the close of all the evidence may be warranted. It may well be that after the record is fully developed Gnadt cannot meet her ultimate burden of establishing that she was demoted on account of her sex. Indeed, in the Title VII context, we have affirmed the entry of judgment under Rule 52(c) at the close of the plaintiff's case-in-chief even though the plaintiff had established a prima facie case. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir.1994). But the record in Ball was clear that the defendant had legitimate, nondiscriminatory reasons for the adverse action. See id. (plaintiff failed to meet deadlines and his performance as a network administrator was unsatisfactory). But, in this case, the record is not clear that comparable evidence exists. In short, the district court found--a finding that is not challenged on appeal--that Gnadt established a prima facie case of discriminatory demotion based on sex, which finding shifted the burden of production to Tino's to articulate a legitimate, nondiscriminatory reason for the demotion. At the time the district court entered judgment under Rule 52(c), no legitimate, nondiscriminatory reason had surfaced that would satisfy Tino's burden of production. Under these circumstances, rather than entering judgment in favor of Tino's, it was incumbent on the district court to put Tino's to the task of articulating a legitimate, nondiscriminatory reason for the demotion. Having failed to do so, the district court erroneously concluded that Tino's had articulated a legitimate, nondiscriminatory reason. Therefore, the presumption of discrimination created by Gnadt's prima facie case still awaits rebuttal. See Hicks, 113 S.Ct. at 2747. Accordingly, we vacate the judgment in part and remand this case to the district court for further proceedings consistent with this opinion.
 
 AFFIRMED IN PART, VACATED IN PART AND REMANDED
 
 
 *
 Originally, Gnadt also appealed the district court's entry of judgment in favor of Tino's on her post-employment retaliation claim. However, at oral argument, Gnadt conceded that her post-employment retaliation claim is foreclosed by our recent en banc decision in Robinson v. Shell Oil Co., 70 F.3d 325, 330 (4th Cir.1995) (en banc ). Accordingly, we do not further address that claim